IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In the Matter of the Arbitration between | ) | |
| | ) | |
| MX, Inc., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 04-1020-CV-W-SOW |
| | ) | |
| ZOTEC SOLUTIONS, Inc., | ) | |
| | ) | |
| Respondent and Counterclaimant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MX, Inc., John Cobb, Lee McCarty, and Jack Nichols, | ) | |
| | ) | |
| Counterclaim Respondents. | ) | |

*ECF DOCUMENT*

I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Western District of Missouri.

Date Filed: 5/2/05

P.L. BRUNS, CLERK

By: _____, Deputy Clerk

ORDER

Before the Court are petitioner MX, Inc.'s Application to Confirm Arbitration Award (Doc. #1), petitioner's Suggestions in Support, respondents' Suggestions in Opposition, and petitioner's Reply. For the reasons stated below, petitioner's Application is granted.

I. Background

Petitioner MX, Inc. asks the Court to affirm the award of the arbitrator in the matter of the Arbitration between MX, Inc. and Zotec Solutions, Inc. pursuant to 9 U.S.C. §§ 9 and 13. According to the record before the Court, MX, Inc. ("MX") is a company that provided medical billing services to various customers. On July 30, 2001 MX and Zotec Solutions, Inc. ("Zotec") entered into a written contract, titled the "Asset Purchase Agreement," whereby MX agreed to

sell its assets in its accounts receivable management service business to Zotec. The written contract contained an arbitration clause.

Subsequently, MX claimed that Zotec breached the Asset Purchase Agreement by failing to pay certain monies alleged to be due under the terms of the contract. Zotec countered by contending that MX had actually breached the contract by breach of warranty and by committing fraud. More specifically, defendant Zotec claims that MX assured Zotec that MX had a good working relationship with the "Exhibit P Customers." Zotec contends that it was led to believe that the "Exhibit P Customers" were satisfied and were likely to sign new service contracts with Zotec. According to Zotec, the relationship between MX and the "Exhibit P Customers" was not as represented in that many of those customers were dissatisfied with MX. Zotec asserts that five of the eight "Exhibit P Customers" terminated MX within weeks after the execution and closing of the Asset Purchase Agreement.

It is undisputed that Zotec collected more than $1.2 million in revenue from MX's former customers in the three years following the September 2001 closing on the parties' Asset Purchase Agreement. Pursuant to the Asset Purchase Agreement, Zotec was to pay MX 10% of the revenues collected from MX's former customers listed on Exhibit P of the Asset Purchase Agreement. Zotec also agreed to pay MX $43,000 for the purchase of certain hard assets. To date, Zotec had paid MX only $20,000 on September 18, 2001.

The parties submitted their dispute to arbitration in accordance with the arbitration clause contained in the Asset Purchase Agreement. On October 8, 2004, after holding hearings at which all parties appeared in person and by counsel, the arbitrator, Max W. Hittle, Jr., found in favor of petitioner MX. and he issued an award in favor of petitioner MX. The arbitrator ordered Zotec to

pay MX the amount of $23,000.00 for the balance of the purchase price of MX's Equipment and Fixtures, plus interest from March 1, 2002 to October 10, 2004 in the amount of $4,824.66, for a total of $27,824.65. In addition, Zotec was ordered to pay MX the amount of $128,959.30 for MX's 10% share of unpaid Renewal Revenues, the amount of $50,000.00 for MX's attorneys' fees, the amount of $8,397.37 for MX's out-of-pocket arbitration expenses, and the amount of $12,525.33, representing amounts previously advanced to the Association by MX. To date, Zotec has not paid petitioner MX said sums. Therefore, petitioner MX seeks an Order from this Court affirming the arbitration award and ordering Zotec to pay said sums. Zotec argues that the arbitration award should not be affirmed.

## II. Standard

"When reviewing an arbitral award, courts accord 'an extraordinary level of deference' to the underlying award itself because federal courts are not authorized to reconsider the merits of an arbitral award . . . ." Stark v. Sandberg, Phoenix & Von Gontard, 381 F.3d 793, 798 (8th Cir. 2004)(citations omitted). The Federal Arbitration Act, 9 U.S.C. §10(a), only allows a district court to vacate an arbitration award:

>  (1) Where the award was procured by corruption, fraud, or undue means.
> 
>  (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> 
>  (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> 
>  (4) Where the arbitrators exceeded their powers, or so imperfectly

3

> executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In addition to these statutory bases, the United States Court of Appeals for the Eighth Circuit permits an arbitration award to be set aside if "it is completely irrational or evidences a manifest disregard for the law." Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672, 674 (8th Cir. 2004)(quotations and citations omitted). Manifest disregard for the law requires proof "that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Stark v. Sanberg, Phoenix, & Von Gontard, P.C., 381 F.3d at 802 (quotation omitted).

### III. Discussion

Defendant Zotec does not claim that arbitrator Hittle committed any act within the statutory bases for setting aside an arbitration award. Instead, Zotec argues that the arbitration award should not be confirmed because it is irrational and constitutes a manifest disregard for the law.

A.   Alleged Failure to Disclose Information

First, defendant Zotec argues that the MX, Inc. defendants committed fraud by failing to disclose "the fractured nature of MX's relationship with the Exhibit P Customers." Zotec contends that under Missouri law, the MX defendants had a duty to disclose this information because "(1) they had superior knowledge about the status of the Exhibit P Customers, and (2) they were parties to a transaction knowing that Zotec had a misapprehension . . . about the Exhibit P Customers." (Zotec Sugg. in Opp. at pp. 2-3). Zotec claims that the arbitrator "refused to even consider whether Zotec had been defrauded." Zotec suggests that this alleged

4

refusal to consider Zotec's evidence constitutes a manifest disregard for the law and that the arbitrator's decision on Zotec's fraud claim was completely irrational.

Under Missouri law,

> In order to establish a claim for nondisclosure or fraudulent misrepresentation, the plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that the representation should be acted upon by the hearer in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) injury to the hearer proximately caused by that reliance.

Dechant v. Saaman Corp., 63 S.W.3d 293, 295 (Mo. Ct. App. 2001). "Failure to prove any of the requisite elements is fatal to a claim for fraud." Id.

The arbitrator made specific findings of fact regarding the facts that Zotec did know in advance of closing on the Asset Purchase Agreement. These findings make it clear that Zotec could not and cannot establish the necessary elements of ignorance, reasonable reliance, or damage proximately caused by any alleged reliance. Specifically, the arbitrator found that Zotec had been provided with copies of all of the service agreements which showed by their own terms that they had expired. In addition, Zotec became aware of MX's servicing problems with certain clients prior to closing on the Asset Purchase Agreement. The arbitrator also found that "[r]egardless of the characterization of MX's acts or omissions prior to closing, the fact remains that MX's customers generated $1,289,593.00 in revenue for Zotec after closing." The arbitrator found that Zotec's claim of extra expenses in keeping the MX Kansas City office open after the closing was "a result of a management/operational decision by Zotec and is not attributable to MX." Finally, the arbitrator found that Zotec did not suffer any loss or damages because MX's

5

customers continued to generate revenues for Zotec after the closing, thereby giving Zotec the benefit if its bargain.

These findings by the arbitrator cannot be characterized as irrational nor can this Court find that they constitute a manifest disregard for the law. It is apparent that the arbitrator rejected Zotec's fraud claim and found that MX did not commit a breach of warranty.

B.   <u>Alleged Breach of Representations and Warranties</u>

Next, Zotec argues that MX breached the representations and warranties section of the Asset Purchase Agreement. The arbitrator found that no breach of warranty occurred. Even if there had been a breach of warranty, MX could not be held liable for the breach because Zotec had waived its right to offset by not giving timely notice and because Zotec had not suffered any loss or damage.

Zotec elected not to rescind the Asset Purchase Agreement upon becoming aware of the alleged breaches of representations and warranties by MX. Instead, Zotec closed on the agreement and began servicing the accounts, earning substantial revenues in the process.

### III. Conclusion

For the reasons stated above, respondent Zotec has failed to demonstrate that the arbitrator's award is irrational or constitutes a manifest disregard for the law. Accordingly, it is hereby

ORDERED that petitioner MX, Inc.'s Application to Confirm Arbitration Award (Doc. #1) is granted and the arbitration award is confirmed in all respects pursuant to 9 U.S.C. §§ 9 and 13. It is further

ORDERED that judgment shall be entered in conformity with the arbitration award and

respondent Zotec is ordered to pay MX as follows:

A. The amount of $23,000.00 for the balance of the purchase price of MX's Equipment and Fixtures, plus interest from March 1, 2002 to October 10, 2004 in the amount of $4,824.66, for a total of $27,824.65;

B. The amount of $128,959.30 for MX's 10% share of unpaid Renewal Revenues;

C. The amount of $50,000.00 for MX's attorneys' fees;

D. The amount of $8,397.37 for MX's out-of-pocket arbitration expenses; and

E. The sum of $12,525.33, representing amounts previously advanced to the Association by the Claimant MX.

This results in a total judgment in the amount of $227,706.66.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 5-2-05